**UNITED STATES of America, Plaintiff,**

v.

**Douglas J. ELLERMAN, Defendant.**

**No. 97–CR–196G.**

United States District Court,
D. Utah,
Central Division.

Jan. 15, 1998.

David J. Schwendiman, U.S. Atty., Salt Lake City, UT, for Plaintiffs.

Ronald J. Yengich, Yengich, Rich & Xaiz, Salt Lake City, UT, for Defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, Senior District Judge.

This matter came before the court at a hearing on December 17, 1997 on defendant's motion to dismiss. Plaintiff is represented by David J. Schwendiman, United States Attorney, and defendant is represented by Ronald J. Yengich, of Yengich, Rich & Xaiz. The court received extensive memorandums of law and heard arguments of counsel, after which the motion was submitted for decision and taken under advisement. Being now fully advised, the court enters its Memorandum Decision and Order.

### FACTUAL BACKGROUND

On March 11, 1997, five pipe bombs were detonated at Fur Breeders Agricultural Co-operative ("Co-op"), a business located in Sandy, Utah. Four of the bombs exploded under Co-op vehicles and a fifth exploded in its office.

Defendant Ellerman confessed to making pipe bombs, carrying them to the Co-op on March 11, 1997, placing a pipe bomb in the building, and watching as others detonated the explosives. Defendant was unwilling to identify the other participants or the individual(s) who funded the purchase of materials used in constructing the pipe bomb. Ellerman did explain to the officers that the raw materials used were purchased locally and that the Sandy, Utah site was chosen because it was the Co-op headquarters. Subsequently, Ellerman was charged with maliciously

damaging by fire or explosives a building and several vehicles owned by the Co-op.

The Co-op has 158 members in Idaho and Utah and owns processing plants in California. The Sandy site provides services, raw materials, and a fleet of long haul trucks used to transport raw materials to Co-op members and animal pelts for sale at auctions which are held in Seattle, Washington, and New Jersey. The Co-op's national market share is approximately twenty percent and international market share is approximately two percent. The explosions on March 11, 1997 interrupted the Co-op's business for six months.

## ANALYSIS

### I. Facial Constitutionality of § 844(i)

Defendant contests the constitutionality of 18 U.S.C. § 844(i), which provides that it is a crime to maliciously damage, destroy or attempt to damage or destroy by means of explosives, any personal or real property used in interstate commerce or in any activity affecting interstate commerce.[1]

Defendant contends that this court should find the statute unconstitutional on its face based on *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and the implication derived therefrom that the Supreme Court is narrowing the reach of the Commerce Clause in federal criminal law. In *Lopez*, the Supreme Court considered whether a statute which makes it a federal crime to possess a firearm in a school zone under the Gun Free School Zones Act is constitutional. The Court found the statute unconstitutional for two reasons. First, that the statute by its terms has no correlation to commerce or any sort of economic enterprise. Second, the statute at issue contains no jurisdictional element to ensure through case by

case inquiry that the crime affects interstate commerce. *Id.* at 559–61. The Court further said that without a jurisdictional determination on a case by case basis "it [would be] difficult to perceive any limitation on federal power" regardless of "how tenuously [activity] would relate to interstate commerce." *Id.* at 564. The *Lopez* Court ruled that Congress only may regulate activity that "substantially affects interstate commerce" in the following three categories: (1) activity affecting the channels of interstate commerce; (2) activity affecting the instrumentalities of interstate commerce; and by (3) activity having a substantial relation to interstate commerce.

The *Lopez* court cited *United States v. Bass*, 404 U.S. 336, 337, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), to contrast a statute not containing a jurisdictional element with one containing such an element. The Supreme Court in *Bass* upheld as constitutional a statute that made it a crime for a felon to receive, possess, or transport a firearm "in commerce or affecting commerce,"[2] ruling that the statute provided a sufficient jurisdictional nexus to interstate commerce.[3] In *Lopez*, the Supreme Court specifically noted the absence of a jurisdictional element in the statute at issue in that case, as contrasted with the statute before the court in *Bass*:

> Unlike the statute in Bass, § 922(1) has no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.

*Id.* at 562.

In the case at bar, 18 U.S.C. § 844(i) is more closely akin to the constitutional statute in *Bass* than the unconstitutional statute in *Lopez* because it contains a jurisdictional element which "might limit its reach

---

1. This section provides:
   § 844(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce shall be imprisoned for not less then 5 years and not more than 20 years ...
   18 U.S.C. § 844(i) (1997).

2. Former 18 U.S.C. § 1202(a).

3. The Supreme Court said, "We have resolved the basic uncertainty about the statute ... concluding that in commerce or affecting commerce [must be] part of the offense ... in order to [determine] that the case is appropriately under federal criminal jurisdiction." *United States v. Bass*, 404 U.S. 336, 351, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

to a discrete set (of activities) that have an explicit connection with or effect on interstate commerce." *Id.*

Defendant argues that § 844(i) does not fall into any of the three categories of permissible regulations which were identified in *Lopez.* In this regard, defendant submits that Congress has no authority to regulate activities which are intrastate in nature, and that a statute may not properly come under the Commerce Clause unless it governs activity which has a substantial effect on interstate commerce. Defendant argues that the statute in this case goes beyond the limit of what Congress may regulate in the name of interstate commerce, and that it is subject to the same constitutional defect noted by Chief Justice Renquist in *Lopez:*

> "[t]o uphold the Government's contentions here, we would have to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States. Admittedly, some of our prior cases have taken long steps down that road, giving great deference to congressional action. The broad language in these opinions has suggested the possibility of additional expansion, but we decline here to proceed any further."

*Id.* at 567.

In *Lopez,* the Court found no jurisdictional element in the statute, and that merely bringing a gun into a school zone did not substantially affect interstate commerce.[4] In contrast, the statute in the instant case explicitly requires an interstate commerce nexus, and the activities outlawed in the statute inherently affect interstate commerce. By the very terms of 844(i), only activities that affect interstate commerce constitute federal crimes, which places it outside of *Lopez* and within the sphere of permissible legislation by the Congress. Accordingly, this court

holds that 18 U.S.C. § 844(i) is constitutional on its face.

### II. Constitutionality of 18 U.S.C. § 844(i) as applied to Ellerman

Defendant argues that even if the statute at issue is upheld as facially constitutional by this court, it is being applied to him unconstitutionally because the specific property damaged is not "used in interstate commerce ... or in any activity affecting interstate commerce" as required by the language of § 844(i). In this regard, defendant cites *United States v. Pappadopoulos,* 64 F.3d 522 (9th Cir.1995), in support of the proposition that a jurisdictional element alone will not preserve the constitutionality of a statute because the property must actually be used in interstate commerce. In *Pappadopoulos,* the Ninth Circuit held that a residence which has as its sole source of interstate commerce connection the receipt of natural gas from a company receiving gas from an out-of-state source is not substantially used in interstate commerce and is not commercial or economic in nature. Thus such a residence has no substantial effect on interstate commerce.

■ The activities and instrumentalities in the case at bar are vastly different than the residence which was discussed in *Pappadopoulos.* In this case, the Co-op's members operate and own property in multiple states, namely Utah, Idaho, and California. Its vehicles travel to various states in order to procure raw materials and carry fur pelts to auctions held in Seattle, Washington and in New Jersey. Twenty percent of the national market share and two percent of the international market share is controlled by the Co-op. This organization's interstate activities are substantial and greatly outweigh the minimal contacts discussed in *Pappadopoulos.* Accordingly, this court determines that the Co-op satisfies two of the *Lopez* categories: activities affecting instrumentalities of inter-

---

4. Justice Breyer in *Lopez,* argued in dissent that firearms in school zones affect interstate commerce by increasing violent crime, which has a negative effect on classroom learning, and that the consequential diminished education of students constitutes an impact upon trade and interstate commerce which Congress could have rationally concluded to be substantial. *Id.* at 615–

623. Justice Breyer cited *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) to support the argument that although a single gun taken into a school zone may not substantially affect interstate commerce, the cumulative effect of all guns possessed in or near schools is "substantial." *Lopez,* 514 U.S. at 616.

state commerce and activities having a substantial relation to interstate commerce. It is manifest under the facts in this case that the Co-op property was substantially "used in" and "affected interstate commerce," and that defendant's conduct affected interstate commerce and its instrumentalities.

In *Russell v. United States,* 471 U.S. 858, 862, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), the Supreme Court ruled that "all business property" is properly governed by section 844(i) because commercial and business property substantially affect interstate commerce. Defendant challenges this as inconsistent with the spirit of *Lopez,* even though *Russell* was not expressly overruled or disapproved in that case. Accordingly, contrary to defendant's contention, the rule set forth in *Russell* constitutes an additional reason to conclude that the statute at issue is not being unconstitutionally applied to defendant since the Co-op's vehicles and office clearly constitute business property.

This court holds that section 844(i) is constitutional as applied to defendant.

### III. The Constitutionality of 18 U.S.C. § 921(a)(4) and § 924(c)[5]

 Ellerman contends that these statutes are unconstitutional because they do not require an interstate nexus, regulate commercial activity, or satisfy the *Lopez* requirements. By embracing "explosive" within the meaning of "destructive device," section 921(a)(4) provides a definition of a term used in § 844(i), and § 924(c) provides enhanced punishment for crimes enumerated in § 844(i). Therefore, these two sections must be read in connection with § 844(i), the statute which provides the basis for the felony charge in this case. It follows that since § 844(i) is not unconstitutional on its face or as applied to defendant, §§ 921(a)(4) and 924(c) are constitutionally valid as well.

Based upon the foregoing, it is hereby

---

**5.** Section 921 provides:
§ 921(a)(4)(A) The term "destructive device" means—
(A) any explosive, incendiary, or poison gas—
(i) bomb.
18 U.S.C. § 921(c)(4)(A)(1997).
Section 924 outlines the penalties for violating the statute:

ORDERED, that defendant's Motion to Dismiss is DENIED.

§ 924(c) provides that whoever, during and in relation to any crime of violence ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.
18 U.S.C. § 924(c) (1997).